IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DOCMAGIC, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09-cv-01779-MLM |
| | ) |
| THE MORTGAGE PARTNERSHIP OF | ) |
| AMERICA, L.L.C. | ) |
| | ) |
| Defendant. | ) |

## FIRST AMENDED COMPLAINT

COMES NOW plaintiff DocMagic, Inc., by and through counsel, and states as follows for its First Amended Complaint against defendant The Mortgage Partnership of America, L.L.C.:

### General Allegations

1. Plaintiff DocMagic, Inc. is and was at all times relevant hereto an entity formed and existing under the laws of the State of California with its principal place of business located in Carson, Los Angeles County, California.

2. Defendant The Mortgage Partnership of America, L.L.C. is and was at all times relevant hereto an entity formed and existing under the laws of the State of Missouri with its principal place of business located in St. Louis County, Missouri.

3. Defendant conducts business under the fictitious name of "Lenders One" and has registered said fictitious name with the Missouri Secretary of State's office.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332(a) in that (i) there is diversity of citizenship as between plaintiff and defendant, and (ii) plaintiff seeks damages against defendant in an amount in excess of $75,000.00.

5. Plaintiff's business consists of providing document preparation software which is used in conjunction with the origination and processing of mortgage loans. Plaintiff's flagship product, DocMagic®, permits mortgage brokers, mortgage bankers, and lenders to easily produce, electronically deliver, and/or print error-free mortgage loan documents via an efficient, simple, and automated software program.

6. Defendant represents and holds itself out as "a national alliance of leading independent mortgage bankers that leverages the combined strength of member companies to provide them with revenue-enhancing, cost-saving, and market-share-expanding opportunities."

7. Defendant has further described its business as providing mortgage products and services, in addition to related products and services, to its members on a cooperative basis.

8. The products and services offered by plaintiff fall within one or more genres of products and services secured by defendant for its members.

9. On or about October 31, 2008, plaintiff and defendant entered into a written agreement ("the Contract") relating to the marketing and promotion of plaintiff's products and services to defendant's members. A true and correct copy of the Contract is attached hereto as Exhibit "A" and fully incorporated herein by this reference.

10. The Contract imposed upon defendant several obligations relative to plaintiff's products and services, to-wit:

    (a) defendant became obligated to refer, market, and promote plaintiff's products and services to its members; and

    (b) defendant became obligated to encourage its members to purchase and use plaintiff's products and services.

2

11. While the Contract provided defendant with the authority to determine the appropriate strategy for marketing and promoting plaintiff's products and services to its members, it did not bestow upon defendant the option of determining that no such marketing strategy or plan was necessary or warranted. Moreover, the Contract granted plaintiff the right to review and approve any marketing materials that referenced plaintiff's products and services.

12. In exchange for and based upon defendant's commitment to perform the obligations set forth in the Contract, plaintiff agreed to offer special, discounted pricing for defendant's members. Specifically, plaintiff agreed to charge defendant's members only $19.50 for each loan closing package and only $3.00 for each pre-disclosure package.

13. The special, discounted pricing that plaintiff agreed to offer to defendant's members in exchange for defendant's marketing and promotion of plaintiff's products and services was significantly less than that which plaintiff typically charges for loan closing packages and pre-disclosure packages to many customers.

14. Prior to entering into the Contract with defendant, plaintiff already had prior established business relationships with, and had previously provided products and services to, twenty-four (24) lenders who, by coincidence, were also members of defendant's alliance of members (which lenders are hereinafter referred to as "the Pre-Existing Customers").

15. The duration of plaintiff's established business relationships with the Pre-Existing Customers prior to entering into the Contract with defendant varied from as little as two (2) months to as much as thirteen (13) years.

16. Based upon defendant agreeing to undertake contractual obligations to market and promote plaintiff's products and services, plaintiff agreed to extend the special, discounted pricing to the Pre-Existing Customers that were Lenders One members. In doing so, plaintiff

3

agreed to reduce by as much as 55% the amount it was charging the Pre-Existing Customers for loan closing packages and pre-disclosure packages prior to entering into the Contract with defendant.

17. Plaintiff's decision to offer the special, discounted pricing to defendant's members and to further offer that same pricing to future orders received from the Pre-Existing Customers – who had already agreed to purchase certain products and services of plaintiff's and were contractually obligated to do so at a significantly higher price – was predicated entirely upon defendant's agreement to market and promote plaintiff's products and services to all of its members.  In essence, plaintiff believed that any losses or shortfalls resulting from offering the special, discounted pricing to the Pre-Existing Customers would be offset by the generation of new business resulting from defendant marketing and promoting plaintiff's products and services to those members other than the Pre-Existing Customers (which members are hereinafter referred to as "the New Customers").

18. Pursuant to the Contract, and to provide an incentive to defendant to market and promote plaintiff's products and services to the New Customers, and for purposes of expanding its base of business and offsetting any losses or shortfalls resulting from the special, discounted pricing, plaintiff agreed to pay defendant a ten (10) percent marketing fee on products or services purchased by the New Customers.

19. In that the Pre-Existing Customers had already decided to purchase certain products and services of plaintiff's and had undertaken contractual obligations to do so, it was plaintiff's understanding, belief, and expectation that defendant would not be entitled to a marketing fee with respect to orders received from the Pre-Existing Customers unless and until the Pre-Existing Customers agreed to purchase a product or service which they had not

4

previously purchased from plaintiff prior to the formalization of plaintiff's relationship with defendant and the execution of the Contract.

### Count I

### Breach of Contract

20.     Plaintiff adopts and incorporates paragraphs 1 through 19 as and for paragraph 20 as if fully restated herein.

21.     The Contract is and was at all times relevant hereto a valid and enforceable agreement between plaintiff and defendant, both of whom had the capacity to enter into the same, and consists of both mutual obligations and valid consideration.

22.     Since November 1, 2008, the date on which the Contract went into effect, plaintiff has fulfilled its obligations relating to the pricing of its products and services and has offered its loan closing packages and pre-disclosure packages to all of defendant's members, including the including the Pre-Existing Customers, for $19.50 and $3.00, respectively.

23.     Between November 1, 2008 and July 31, 2009, plaintiff's Pre-Existing Customers orders of plaintiff's products generated revenue totaling $546,390.50.

24.     As a result of having extended its special, discounted pricing to the Pre-Existing Customers, plaintiff incurred lost revenues totaling $204,436.50 on those products and services that were ordered by the Pre-Existing Customers between November 1, 2008 and July 31, 2009.

25.     Meanwhile, and upon information and belief, since November 1, 2008 defendant has not undertaken any efforts to market or promote plaintiff's products and services to the New Customers with the exception that defendant initially announced its partnership with plaintiff via an e-mail blast and a written press release.

26. Moreover, and upon further information and belief, defendant has not developed a marketing strategy of any sort relative to the marketing and promotion of plaintiff's products and services to the New Customers.

27. Defendant's failures to market and promote plaintiff's products and services to the New Customers and to develop a marketing strategy for plaintiff's products and services to the New Customers is evidenced by virtue of the fact that it has never submitted to plaintiff for review and approval any marketing materials that reference plaintiff's products and services.

28. Defendant has breached the Contract by failing to fulfill its obligations to market and promote plaintiff's products and services to the New Customers.

29. As a result of defendant breaching its contractual obligations to market and promote plaintiff's products and services, the New Customers purchased only $33,364.50 worth of plaintiff's products and services between November 1, 2008 and July 31, 2009.

30. Plaintiff has incurred damages as a result of defendant breaching its contractual obligations to market and promote plaintiff's products and services to the New Customers.

31. Through July 31, 2009, plaintiff's damages amounted to $204,436.50 (the amount of revenue lost by virtue of plaintiff having agreed to extend the special, discounted pricing to the Pre-Existing Customers in exchange for defendant's agreement to market plaintiff's products and services to all of its members) less $33,364.50 (the amount of revenue generated from sales of plaintiff's products and services to the New Customers), for a total of $171,072.00.

32. Since July 31, 2009 plaintiff has continued to incur damages in the form of lost revenues as a result of having extended its special, discounted pricing to the Pre-Existing Customers and will continue to do so for the duration of the Contract, which was not due to expire until October 31, 2011. By plaintiff's estimation, and based upon the losses incurred to

6

date, it will incur losses from the extension of the discounted pricing to its Pre-Existing Customers totaling at least $816,000.00 throughout the course of the life of the Contract.

33. Defendant has further breached the Contract by charging and demanding from plaintiff a marketing fee despite not having undertaken any efforts to market plaintiff's products and services to the New Customers.

34. As a result of defendant charging and demanding from plaintiff a marketing fee despite not having undertaken any efforts to market plaintiff's products and services to the New Customers, plaintiff has incurred damages in the amount of $10,960.85, which is the sum total of marketing fees charged by and paid to defendant through June 2009.

35. Defendant has further breached the contract by failing and refusing to grant plaintiff admission to defendant's July 2009 membership conference, a conference that plaintiff was contractually permitted and required to attend and co-sponsor.

36. As a result of defendant failing and refusing to grant plaintiff admission to defendant's July 2009 membership conference, plaintiff has incurred damages.

37. Pursuant to paragraph 17 of the Contract, defendant is obligated to indemnify plaintiff from any and all losses, liabilities, costs, and expenses resulting from the former having breached its obligations to market and promote plaintiff's products and services.

38. Pursuant to paragraph 19 of the Contract, plaintiff is entitled to recover from defendant its reasonable legal fees and other costs and expenses incurred in conjunction with the prosecution of its claim for breach of contract.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count I of its Complaint, for an award of damages in a fair and reasonable amount in excess of $75,000.00, for an award of its

reasonable attorneys' fees and costs incurred herein, and for such other and further relief it deems just and proper under the premises.

## Count II

### Breach of Duty of Good Faith and Fair Dealing

39. Plaintiff adopts and incorporates paragraphs 1 through 38 as and for paragraph 39 as if fully restated herein.

40. Under Missouri law, the Contract contains an implied covenant of good faith and fair dealing which required defendant to cooperate with plaintiff in order to enable performance and achievement of the Contract's expected benefits.

41. The benefit for which plaintiff bargained in entering into the Contract with defendant was that its business would have the opportunity to grow and expand as a result of defendant marketing and promoting plaintiff's products and services to the New Customers.

42. The benefit for which plaintiff so bargained has not been achieved.

43. The failure to achieve the benefit for which plaintiff bargained is the result of defendant having failed and refused to undertake its obligations to market plaintiff's products and services to the New Customers.

44. In failing and refusing to undertake its obligations to market plaintiff's products and services to the New Customers, defendant has failed to cooperate with plaintiff in achieving the benefit for which plaintiff bargained.

45. Defendant's conduct in failing and refusing to market plaintiff's products and services prejudiced plaintiff's right and expectation to achieve the benefit for which it bargained.

46. Defendant has further prevented plaintiff from achieving the benefit for which it bargained by charging and demanding from plaintiff a marketing fee when it has not undertaken

8

any efforts to market plaintiff's products and services and by demanding payment for sales of products and services to the Pre-Existing Customers.

47. Defendant has further prevented plaintiff from achieving the benefit for which it bargained by advising its members that continued use of plaintiff's products and services could negatively impact their businesses and encouraging its members to use one of plaintiff's competitors instead of plaintiff.

48. Defendant has breached the Contract's implied covenant of good faith and fair dealing.

49. Plaintiff has incurred damages as a result of defendant having breached the Contract's implied covenant of good faith and fair dealing.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count II of its Complaint, for an award of damages in a fair and reasonable amount in excess of $75,000.00, for an award of its reasonable attorneys' fees and costs incurred herein, and for such other and further relief it deems just and proper under the premises.

### Count III

### Rescission

50. Plaintiff adopts and incorporates paragraphs 1 through 49 as and for paragraph 50 as if fully restated herein.

51. Defendant's obligation to market and promote plaintiff's products and services to the New Customers was the vital provision of the Contract and went to the very root of the same in that plaintiff agreed to offer special, discounted pricing in exchange for defendant undertaking said obligation.

9

52. As previously set forth herein, defendant has breached its obligation to market and promote plaintiff's products and services to the New Customers.

53. By breaching its obligation to market and promote the plaintiff's products and services to the New Customers, defendant has committed a material breach of the Contract.

54. The benefits conferred by plaintiff upon defendant and its members pursuant to the Contract exceed those received by plaintiff, thereby obviating the requirement that plaintiff tender to defendant the benefits it has received to date.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count III of its Complaint, for an award of restitution in a fair and reasonable amount in excess of $75,000.00, for an award of its reasonable attorneys' fees and costs incurred herein, and for such other and further relief it deems just and proper under the premises.

## Count IV

### Declaratory Judgment

55. Plaintiff adopts and incorporates paragraphs 1 through 54 as and for paragraph 55 as if fully restated herein.

56. Plaintiff's interest in the Contract constitutes a legally protectable interest which is at stake.

57. As previously set forth herein, plaintiff believes that defendant is not entitled to a marketing fee with respect to the sale of plaintiff's products and services to Pre-Existing Customers unless and until the Pre-Existing Customers agreed to purchase a product or service which they had not previously purchased from plaintiff prior to the formalization of plaintiff's relationship with defendant and the execution of the Contract.

58.　Contrarily, defendant contends that under the Contract it is entitled to a marketing fee relative to the sale of plaintiff's products and services to plaintiff's Pre-Existing Customers, regardless of whether those Pre-Existing Customers had previously decided to purchase the same from plaintiff and had been long term customers of plaintiff.

59.　The foregoing demonstrates the existence of a justiciable controversy between plaintiff and defendant, which controversy is ripe and appropriate for judicial resolution.

60.　Plaintiff does not have an adequate remedy at law.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count IV of its Complaint, for its entry of an Order declaring, decreeing, and adjudging the rights of plaintiff and defendant under the Contract and further declaring, decreeing, and adjudging that plaintiff is not obligated to pay and defendant is not entitled to receive a marketing fee following the sale of any of plaintiff's products or services to the Pre-Existing Customers unless and until said Pre-Existing Customers purchase a product or service from plaintiff which they had not purchased from plaintiff prior to November 1, 2008, and awarding such other and further relief it deems just and proper under the premises.

## Count V

## Unjust Enrichment

61.　Plaintiff adopts and incorporates paragraphs 1 through 60 as and for paragraph 61 as if fully restated herein.

62.　During the first two (2) months the Contract was in effect, plaintiff mistakenly paid defendant a marketing fee for products and services which were ordered since inception of the Contract by Pre-Existing Customers.

63. In doing so, plaintiff mistakenly conferred upon defendant a benefit in the amount of $8,037.15.

64. Defendant has acknowledged or recognized that plaintiff conferred said benefit upon it.

65. Defendant has retained the benefit conferred upon it by plaintiff.

66. It would be unjust to permit defendant to retain the benefit conferred upon it by plaintiff in that defendant was not entitled to a marketing fee on the products and services which were sold to Pre-Existing Customers.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count V of its Complaint, for an award of restitution in an amount of the amount of not less than $8,037.15, for an award of its reasonable attorneys' fees and costs incurred herein, and for such other and further relief it deems just and proper under the premises.

### Count VI

### Tortious Interference

67. Plaintiff adopts and incorporates paragraphs 1 through 66 as and for paragraph 67 as if fully restated herein.

68. Plaintiff has, and has had since at least November 1, 2008, valid business relationships and/or expectancies with defendant's members, including both the New Customers and the Pre-Existing Customers.

69. At all times relevant hereto, defendant has had knowledge of plaintiff's valid business relationships and/or expectancies with defendant's members, including both the New Customers and the Pre-Existing Customers.

70. Defendant intentionally and purposely interfered with the valid business relationships and/or expectancies which plaintiff maintains with defendant's members, including both the New Customers and the Pre-Existing Customers, by refusing to grant plaintiff admission to its July 2009 membership conference.

71. The purpose of defendant's July 2009 membership conference was to provide vendors such as plaintiff with the opportunity to participate with defendant in the marketing and promotion of products and services to defendant's members, including both the New Customers and the Pre-Existing Customers.

72. Plaintiff was contractually obligated and entitled to participate in defendant's July 2009 membership conference.

73. Defendant nonetheless refused and declined to grant plaintiff admission to its July 2009 membership conference.

74. By denying plaintiff admission to its July 2009 membership conference, defendant obstructed and prevented plaintiff from marketing and promoting its products and services to defendant's members, including both the New Customers and the Pre-Existing Customers.

75. Defendant lacked legal justification for denying plaintiff admission to defendant's July 2009 membership conference.

76. Defendant further intentionally and purposely interfered with the valid business relationships and/or expectancies which plaintiff maintains with defendant's members, including both the New Customers and the Pre-Existing Customers, by informing said members that continued use of plaintiff's products and services could negatively impact their businesses and suggesting that they use one of plaintiff's competitors instead of plaintiff.

77. Plaintiff has incurred damages as a result of defendant intentionally and purposely interfering with the valid and business relationships and/or expectancies which plaintiff maintains with defendant's members, including both the New Customers and the Pre-Existing Customers.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count VI of its Complaint, for an award of damages in a fair and reasonable amount, and for such other and further relief it deems just and proper under the premises.

## Count VII

## Fraud in the Inducement

78. Plaintiff adopts and incorporates paragraphs 1 through 77 as and for paragraph 78 as if fully restated herein.

79. Defendant represented to plaintiff that it would refer, market, and promote plaintiff's products and services to its Members. This included the representation that defendant's representatives would visit its Members and actively encourage them to use plaintiff as their document provider.

80. Defendant further represented to plaintiff that defendant did a very large number of loan closings each year and that, while plaintiff would not get document orders for all of those closings, plaintiff would get document orders for a significant number of those closings.

81. Defendant further represented to plaintiff that defendant desired to have plaintiff as its preferred document provider and pushed plaintiff to enter into the Contract as soon as possible.

82. These representations were material to plaintiff's decisions to enter into the Contract and to offer the special, discounted pricing to all defendant's Members, including the Pre-Existing Customers.

83. Defendant and/or defendant's agents and representatives knew these representations were false when they were made to plaintiff.

84. Defendant intended that plaintiff act on the representations by entering into the Contract and by offering the special, discounted pricing to all of defendant's Members, including the Pre-Existing Customers.

85. Plaintiff was ignorant of the falsity of these representations.

86. Plaintiff relied on these representations in making its decisions to enter into the Contract and to offer the special, discounted pricing to all defendant's Members, including the Pre-Existing Customers.

87. Plaintiff had the right to rely on these representations.

88. Plaintiff has incurred damages as a result of defendant's false representations and as a result of being fraudulently induced to enter into the Contract.

WHEREFORE, plaintiff DocMagic, Inc. prays this Court for Judgment in its favor and against defendant The Mortgage Partnership of America, L.L.C. on Count VII of its Complaint, for an award of damages in a fair and reasonable amount, and for such other and further relief it deems just and proper under the premises.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

MARTIN, LEIGH, LAWS & FRITZLEN, P.C.

 /s/ Shawn T. Briner
Shawn T. Briner, #113136
7733 Forsyth, Suite 1975
St. Louis, MO  63105
Telephone:     (314) 862-5200
Facsimile:      (314) 863-4600
stb@mllfpc.com
*Attorneys for Plaintiff*