## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DOCMAGIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1779MLM |
| | ) | |
| THE MORTGAGE PARTNERSHIP OF | ) | |
| AMERICA, LLC d/b/a LENDERS ONE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on post-trial Motions filed by plaintiff, DocMagic, Inc. ("plaintiff" or "DocMagic") and by defendant, The Mortgage Partnership of America, LLC d/b/a Lenders One ("defendant" or "Lenders One"). This case was tried to a jury from November 7, 2011 through November 14, 2011. The jury found as follows:

On the claim of plaintiff DocMagic against defendant Lenders One, for breach of the Agreement to refer, market and promote the products of plaintiff DocMagic, the jury found in favor of defendant Lenders One.

On the claim of plaintiff DocMagic against defendant Lenders One, for refusing to allow plaintiff DocMagic to attend the August conference in the District of Columbia, the jury found in favor of plaintiff DocMagic in the amount of zero dollars ($0.00).

On the claim of plaintiff DocMagic against defendant Lenders One,  for evading the spirit of the Agreement, the jury found in favor of defendant Lenders One.

On the claim of plaintiff DocMagic against defendant Lenders One, for denying plaintiff DocMagic the expected benefit of the Agreement, the jury found in favor of defendant Lenders One.

On the claim of plaintiff DocMagic against defendant Lenders One, for misrepresentation that it would refer, market and promote plaintiff DocMagic's projects and services, the jury found in favor of defendant Lenders One.

On the claim of plaintiff DocMagic against defendant Lenders One, for misrepresentation that there was an immediate opportunity for plaintiff DocMagic to capture Calyx users, the jury found in favor of plaintiff DocMagic in the amount of  Two Hundred Forty Three Thousand Dollars ($243,000.00).

On the claim of plaintiff DocMagic against defendant Lenders One, for misrepresentation that it would get a majority of the 20,000 loans closed per month, the jury found in favor of defendant Lenders One.

On the claim of defendant Lenders One against plaintiff DocMagic, for breach of the Agreement by failing to give Lenders One accurate monthly sales reports, the jury found in favor of defendant Lenders One.

On the claim of defendant Lenders One against plaintiff DocMagic, for breach of the Agreement for failing to pay defendant Lenders One a monthly 10% marketing fee on its revenue from all sales to all defendant Lenders One's members, the jury

found in favor of defendant Lenders One in the amount of Fifty Two Thousand Five

Hundred Dollars ($52,500.00).

I.    **Plaintiff's Motion for New Trial, or in the Alternative, for Additur (Doc. 154, 155)**
      **Defendant opposed the Motion (Doc. 161)**
      **Plaintiff replied (Doc. 164)**

Plaintiff moves for new trial on seven grounds: that the jury's verdicts on

DocMagic's claims for (1) breach of contract and (2) breach of the duty of good faith

and fair dealing, were against the weight of the evidence and the jury's verdicts on

these two claims were inconsistent, (3) and (4).  Plaintiff also moves for additur on

the grounds that the jury's verdicts on DocMagic's claims for breach of contract (5)

and fraud in the inducement (6) were inadequate.  Plaintiff also moves for a new trial

on the ground that (7) the conduct of Scott Stern was prejudicial and warrants a new

trial.  Defendant has responded to each of these grounds.

A.    <u>Applicable Law</u>

Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure provides that:

(1) ***Grounds for New Trial.*** The court may, on motion, grant a new
trial on all or some of the issues - - and to any party - - as follows:

(A) after a jury trial for any reason for which a new trial has heretofore
been granted in an action at law in federal court.

Federal Rule of Civil Procedure 59(a)(1)(A) "confirms the trial court's historic

power to grant a new trial based on its appraisal on the fairness of the trial and the

reliability of the jury's verdict."  <u>Gray v. Bicknell</u>, 86 F.3d 1472, 1480 (8th Cir. 1996).

"The authority to grant a new trial. . .is confided almost entirely to the exercise of

discretion on the part of the trial court." Sanford v. Crittenden Memorial Hospital, 141 F.3d 882, 884 (8th Cir. 1998).

A motion for new trial should only be granted "if the jury verdict were [sic] against the great weight of the evidence so as to constitute a miscarriage of justice." Denesha v. Farmer's Ins. Exchange, 161 F.3d 491, 497 (8th Cir. 1998), quoting Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1959); Harris v. Sec'y. of the Army, 119 F.3d 1313, 1318 (8th Cir. 1997); Gray, 86 F.3d at 1480 ("[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award or legal errors at trial, resulted in a miscarriage of justice"). The Eighth Circuit has consistently taken the position that a new trial is only appropriate when the "outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." Christensen v. Titan Distrib., Inc., 481 F.3d 1085, 1098 (8th Cir. 2007) (internal quotation omitted). Even as recently as 2010, the Eighth Circuit held that a new trial is warranted only "where the verdict is against the clear weight of the evidence, clearly excessive or the result of passion or prejudice." Jones v. National American University, 608 F.3d 1039, 1048 (8th Cir. 2010)(internal quotation omitted).

In White v. Pence, 961 F.2d 776, 779-781 (8th Cir. 1992) the Eighth Circuit discussed at length the difference between motions for judgment as a matter of law and for a new trial. The court said:

> With respect to motions for a new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence - - it can 'weigh

the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" <u>Ryan v. McDonough Power Equip.</u>, 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted).

<u>Id.</u> at 780.

However, the court made it clear that the jury's verdict must at least be against the *great* weight of the evidence and endorsed the proposition that otherwise it "would destroy the role of the jury as the principal trier of the facts and would enable the trial judge to disregard the jury's verdict at will." <u>Id.</u>  The court concluded that regardless of the rhetoric, the true standard for granting a new trial is simply one "which measures the result in terms of whether a miscarriage of justice has occurred." <u>Id.</u>  The court emphasized that the trial court's discretion is not boundless and it is not "free to re-weigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." <u>Id.</u>, <u>quoting</u> <u>Fireman's Fund Insurance Co. v. Aalco Wrecking Co.</u>, 466 F.2d 179, 186 (8th Cir. 1972).  In other words, the "trial judge may not usurp the functions of the jury . . .[which] weighs the evidence and credibility of witnesses." <u>Id.</u> at 781, <u>quoting</u> <u>McGee v. South Pemiscot School Dist.</u>, 712 F.2d 339, 344 (8th Cir. 1983).

B.    <u>Discussion</u>

1.    Weight of the Evidence on Breach of Contract

Plaintiff's first two grounds for moving for a new trial are that the jury's verdicts on plaintiff's breach of contract claim and breach of the duty of good faith and fair dealing claim were against the weight of the evidence.

Instruction No. 9 on plaintiff's claim for breach of contract submitted two alternative grounds on which the jury could find that Lenders One breached the Agreement between the parties. As to the first alternative, the jury found in favor of Lenders One on plaintiff's claim that Lenders One did not refer, market or promote the products of DocMagic.

The court has reviewed the five days of evidence, testimony, exhibits and e-mails. The extensive testimony of Barry Sandweiss, Amy Scarborough and Luke Pille outlined in detail the means and methods used by Lenders One to refer, market and promote their various vendors to their Members. There was an abundance of evidence on this subject. The fact that Lenders One's methods did not comport with what DocMagic thought should be done is clearly not grounds for an allegation that Lenders One did <u>nothing</u> to refer, market or promote DocMagic's product. The jury weighed the evidence and credibility of the witnesses and found for Lenders One. This was not against the great weight of the evidence nor a miscarriage of justice and clearly cannot be grounds for a new trial. <u>See</u> <u>White</u>, 961 F.2d at 779-781.

As to the second alternative on the breach of contract count, the jury found in favor of DocMagic on DocMagic's claim that Lenders One refused to allow DocMagic to attend the August conference in the District of Columbia. The evidence and testimony were clear that DocMagic was not permitted to attend. The jury found, however, that DocMagic should be awarded zero damages. This point will be taken up in the section of this Memorandum Opinion concerning damages and additur.

2.    **Weight of the Evidence on Breach of the Duty of Good Faith and Fair Dealing**

Instruction No. 10 on Breach of the Duty of Good Faith and Fair Dealing also submitted two alternative grounds on which the jury could find that Lenders One breached this duty.  The jury found for Lenders One on both the claim that Lenders One evaded the spirit of the Agreement and that Lenders One denied DocMagic the expected benefit of the Agreement.

There is no dispute that "Missouri law implies a covenant of good faith and fair dealing in every contract."  Missouri Consolidated Health Care Plan v. Community Health Plan, 81 S.W.3d 34, 45 (Mo. Ct. App. 2002) quoting Farmers' Electric Cooperative, Inc. v. Missouri Department of Corrections, 977 S.W.2d 266, 271 (Mo. banc 1998).  This duty imposes on parties to a contract the obligation to exercise any discretionary power conferred by the contract in good faith.  Missouri Consolidated Health Care Plan, 81 S.W.3d at 46.

In the present case, the Agreement provides "in performing its marketing efforts, Lenders One shall in its sole discretion determine its own marketing strategy; . . .".

In the present case, plaintiff claims that "none of the evidence suggested anything Lenders One did was in good faith." This allegation is clearly an overstatement.  There was no miscarriage of justice in the jury's finding that Lenders One did not evade the spirit of the Agreement nor did it deny DocMagic the expected benefit of the agreement.  As noted above, the testimony of Barry Sandweiss, Amy Scarborough and Luke Pille detailed Lenders One's marketing efforts.  Luke Pille

testified that they <u>never</u> limited their presentations to only one vendor.  They presented a wide range of services offered by various vendors to give Members the maximum amount of choices.  Although there was some evidence that no marketing was done after approximately March 25, 2009, this was after DocMagic had not paid the fees owed under the Agreement nor sent the proper reports.  Other credible evidence was that marketing efforts ceased after August 15, 2009.

The Agreement clearly stated that the Agreement was not exclusive.[1] DocMagic's argument that when Lenders One marketed the products of a competitor, IDS, it was violating the spirit of the Agreement is refuted by the Agreement itself.  The jury's verdicts on these claims were supported by the great weight of the evidence.

<u>White</u>, 761 F.2d at 781 sets the method of analysis for determining the weight of the evidence where the subject matter of the litigation is simple and where it is more complex.  Where there is no complicated evidence nor legal principles that would confuse the jury, "the court should be reluctant to grant a new trial."  <u>Id.</u> "[W]here reasonable men can differ in evaluating credible evidence, a new trial on the ground of weight of the evidence should not be granted."  <u>Id.</u>  That is the situation here.  As Lenders One points out, this was an "extraordinarily qualified

---

[1]        The Agreement states at ¶2 ". . .Lenders One makes no representation that the Members will purchase or use the Products and Services or that DocMagic will be the only provider offering its Products and Services, or other products and services that are similar to DocMagic's Products and Services to the Members. This Agreement is not intended to enable, nor does it authorize DocMagic to be an exclusive provider of any type of products or services to the members."

jury". (Doc. 161 at 3) They weighed the evidence and evaluated the credibility of the witnesses and under these circumstances the court should not usurp the functions of the jury. See, Id.

### 3. and 4. Inconsistent Verdicts

Defendant initially states the jury's verdicts on the breach of contract claims and its verdicts on the breach of duty and good faith and fair dealing were inconsistent. Plaintiff cites numerous cases for the proposition that irreconcilably conflicting verdicts warrant a new trial. However, when plaintiff argues this issue in its memorandum, plaintiff argues that the jury's verdict on its claim for fraud in the inducement and its verdicts on the breach of the duty of good faith and fair dealing were inconsistent. Plaintiff then adds that the finding for DocMagic on the contract breach alternative of refusal to allow DocMagic to attend the August conference in Washington, DC and the finding for Lenders One on the breach of the duty of good faith and fair dealing alternatives of evading the spirit of the Agreement and denying the expected benefit of the Agreement were inconsistent. Plaintiff's arguments are not crystal clear but to the extent they argue any inconsistency, they will be considered.

As an initial matter, defendant argues that plaintiff waived the right to seek a new trial for inconsistent verdicts. Defendant cites Eighth Circuit cases for the proposition that plaintiff waived its right to a new trial by failing to object to the inconsistency prior to the discharge of the jury. DocMagic distinguishes the cases on their facts. Nevertheless, the court finds that these cases cite the appropriate rule.

The court need not decide the waiver issue however, because the court finds the verdicts were not inconsistent.

DocMagic first argues that the jury's return of a verdict in favor of DocMagic on the contract claim that Lenders One refused to allow DocMagic to attend the August conference and the award of zero damages is inconsistent. The evidence was clear that Lenders One did in fact refuse to allow DocMagic to attend the conference. However, there was no proof of monetary damage resulting from this refusal. The jury properly did not come up with some figure unsupported by the evidence. "The mere fact that the jury returned a verdict for a plaintiff but assessed the damages as 'none' does not make such a verdict invalid or ambiguous nor does it necessitate a new trial." Spears v. Hough, 458 F.2d 529, 531 (8th Cir. 1972) citing Joseph B. Rowlen, 425 F.2d 1010, 1011 (7th Cir. 1970); Wingerter v. Maryland Casualty Co., 313 F.2d 754, 756 (5th Cir. 1963) ("although the state decisions are in conflict on this point, see annotations found in 116 A.L.R. p. 834, 49 A.L.R.2d p. 1331 and 1334, the federal rule is that such a verdict is not invalid or ambiguous and does not necessitate a new trial.") See also Dairy Farmers of America, Inc. v. Travelers Insurance Co., 391 F.3d 936, 945 (8th Cir. 2004).

As to plaintiff's argument that the jury's verdict in favor of DocMagic on the contract breach alternative that Lenders One refused to allow DocMagic to attend the conference is inconsistent with the finding in favor of Lenders One on the two breach of good faith and fair dealing claims, the court again finds the verdicts not inconsistent. By the time of the August conference, DocMagic had clearly failed to

- 10 -

give Lenders One accurate monthly sales reports and failed to pay Lenders One a monthly 10% marketing fee on its revenues from all sales to all Lenders One's members.  It was the jury's function to weigh the evidence and the credibility of the witnesses and it is not the court's role to usurp this function.  <u>White</u>, 961 F.2d at 780. The jury found that Lenders One did not allow DocMagic to attend the conference but only <u>after</u> DocMagic had failed to report and pay.  Therefore the jury, appropriately exercising its functions, did not believe that this evaded the spirit of the Agreement or that it deprived DocMagic of the expected benefit of the Agreement.

As to DocMagic's argument that the jury's verdict for DocMagic on its tort claim that Lenders One misrepresented that there was an immediate opportunity to capture Caylx users is inconsistent with its verdicts for Lenders One on its contract claims that Lenders One evaded the spirit of the Agreement and denied DocMagic the expected benefit of the Agreement, the court again finds no inconsistency.  The e-mails concerning Calyx users were undoubtedly one of the factors that led the jury to conclude that Lenders One induced DocMagic to sign the Agreement by dangling this opportunity before it.  However, it was neither a promise nor a guarantee.  The Agreement itself did not mention Caylx or Caylx users, therefore the jury reasonably concluded that Caylx users were not part of the spirit or benefit of the Agreement. They were merely proffered inducements and the jury finding of $243,000.00 in damages on this claim is significant.  It is to be noted that the jury did <u>not</u> find that Lenders One misrepresented that DocMagic would get a majority of the 20,000

loans closed per month.  This jury was able to separate the claims and reach conclusions that were neither inconsistent nor against the weight of the evidence.

    5. and 6.      Inadequate Verdicts

    Plaintiff moves for a new trial and alternatively moves for additur because the jury's verdict on the contract claim in favor of DocMagic for being denied attendance at the August conference but awarding zero damages and the verdict on the claim of fraudulently misrepresenting the immediate opportunity to capture Caylx users and awarding $243,000.00 in damages were inadequate.  Plaintiff's cases cited for the proposition that a new trial is the appropriate remedy depend on the amount of damages being "undisputed."  Here, DocMagic claims the undisputed evidence shows that their lack of attendance at the conference cost them $994,000.00.  This figure, according to DocMagic, is the "actual difference between the revenue that DocMagic's sales actually brought versus what would have been obtained but for the breach." (Doc. 155 at 7) It is clear that this figure is speculative in that it cannot be said that the failure to attend the conference caused this amount of damage. DocMagic attributes this figure to the "breach of the Agreement" overall.  However, the jury only found for DocMagic on the conference claim.  The figure is thus not undisputed.

    DocMagic also claims $994,000.00 for its fraud in the inducement claim and more than $3,000,000.00 "in damages reasonably projected into the future." (Doc. 55 at 9).  The prevailing principle found in all cases dealing with damages is that "fixing damages is peculiarly a jury function, and its award will be sustained unless

- 12 -

shown to indicate prejudice, mistake, or a complete disregard of law and evidence." Wright v. Hoover, 329 F.2d 72, 76 (8th Cir. 1964).  DocMagic apparently bases its calculations of lost profits of $994,000.00 during the initial 36 months of the Agreement plus future lost profits.  DocMagic apparently arrived at the $994,000.00 figure by multiplying the difference between its pre-Agreement and post-Agreement sale price by the volume of actual and projected sales volume.  This averages out to $27,611.00 per month for the 36 months of the agreement (November 1, 2008 - October 31, 2011).

Although the jury found that Lenders One did not breach, it awarded DocMagic $243,000.00 on the fraudulent inducement claim.  This sum happens to be $27,000.00 for 9 months (November 1, 2008 - August, 2009), the time of the conference and almost 60 days after the June 15th Notice of Default.  It is clear that the jury - - as noted above, an "extraordinarily qualified jury" - - did not disregard the evidence.  Their verdicts are consistent with the acknowledgment in the Agreement signed by DocMagic that Lenders One made no representations or warranties that any Members would buy products from DocMagic.  The damage award is reasonably calculated from the evidence.

DocMagic's request for additur must be denied.  The Supreme Court held in Dimmick v. Schiedt, 293 U.S. 474 (1935) than an order of additur by a federal court violates the Seventh Amendment to a jury trial in civil cases.  The Eighth Circuit expressly upheld the Dimmick rule in Novak v. Gramm, 469 F.2d 430 (8th Cir. 1972):

> Plaintiff also contends that *Dimmick v. Schiedt*, supra, should be limited to its facts. . . . The rule laid down in *Dimmick*, although a close question of law at the time, has since become a firmly entrenched rule. There is no indication that the potential convenience of a different rule has altered the Supreme Court's view on this time-honored construction of the seventh amendment.

Id. at 433.

Because the rule is longstanding and firmly entrenched, plaintiff's claims for additur must be denied.

### 7.    Prejudicial Behavior by Scott Stern

Plaintiff argues that during the testimony of Amy Scarborough, Scott Stern, the President of Lenders One, was observed silently mouthing words, purportedly to influence her testimony. This was brought to the attention of the court at a recess and Mr. Stern was admonished. It is to be noted that the court did not observe his conduct but has no reason to doubt the word of opposing counsel. There is no evidence that the jury observed any inappropriate conduct, and it is further noted that Mr. Stern was at least partially obscured from the jury's view by furniture, the podium and opposing counsel. Mr. Stern denied coaching on cross examination and Amy Scarborough denied it as well. Ms. Scarborough was an extremely competent and well-prepared witness. She needed no coaching.[2] During the court's admonition there was no finding of prejudice. In addition, although the matter was brought to the court's attention, there was no request for a mistrial, a cautionary instruction or any other such relief. DocMagic is not entitled to a new trial on this ground.

-----

[2]    DocMagic's allegation that her testimony was "tainted and dishonest" (Doc. 155 at 11) is without basis in fact.

C.    **Conclusion**

Applying the law set out above in section A of this Memorandum Opinion the court finds that DocMagic's Motion for New Trial, or in the Alternative, for Additur must be denied.

II.    **Defendant's Motion to Alter or Amend the Order and Findings of November 14, 2011 and for Judgment as a Matter of Law [Doc. 156, 157]**
       **Plaintiff opposed the Motion [Doc. 159]**
       **Defendant replied [Doc. 168]**

In this Motion, defendant Lenders One moves to amend the Judgment in a Civil Case (Doc. 147) signed by the court on November 14, 2011 and moves for [Renewed] Judgment as a Matter of Law.

Plaintiff opposes the Motion on the ground that it was not timely filed and thus should be denied.

Federal Rule of Civil Procedure 50(b) provides in pertinent part:

No later than 28 days after the entry of judgment . . .the movant may file a renewed motion for judgment as a matter of law . . .

Federal Rule of Civil Procedure 52(b) provides in pertinent part:

On a party's motion, filed no later than 28 days after the entry of judgment, the court may amend its findings - - or make additional findings - - and may amend the judgment accordingly. . . .

Federal Rule of Civil Procedure 6(b)(2) provides in pertinent part:

A court must not expand the time to act under Rules 50(b) . . . 52(b) . . .

In the present case the jury returned its verdict and the court signed the Judgment in a Civil Case (Doc. 147) on November 14, 2011.  The clerk entered the Judgment on November 16, 2011.  <u>See</u> Fed.R.Civ.P. 79(a).

Plaintiff argues that the 28 day period began to run on November 14, 2011 and defendant's Motion to Amend the Judgment or for Judgment as a Matter of Law was not filed until December 13, 2011 which is 29 days after the Judgment was signed.  Defendant counters that the time should be counted from the date the Judgment was entered on the docket (as the rules plainly state).  The entry date was November 16, 2011.  The filing on December 13, 2011 was thus filed 27 days after the entry.

In addition, defendant points to Fed.R.Civ.P. 6(d) which provides that when service is made electronically pursuant to Rule 5(b)(2)(E), three additional days are added to the time computation.

If one properly computes the time from entry of the Judgment, the defendant's Motion is timely.  Even if one computes the time from the date of the signature, the three additional days allowed by Rule 5(b)(2)(E) makes the defendant's Motion timely filed.

A.    <u>Applicable Law</u>

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Judgment as a Matter of Law should not be granted unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue."  Fed.R.Civ.P. 50(a)(1).  In applying the standard, a court must "draw all reasonable inferences in favor of the non-moving party without

making credibility assessments or weighing the evidence." <u>Arabian Agriculture Services Co. v. Chief Industries, Inc.</u>, 309 F.3d 479, 482 (8th Cir. 2002) (<u>quoting Phillips v. Collings</u>, 256 F.3d 843, 847 (8th Cir. 2001)).   A court should grant Judgment as a Matter of Law "only when all the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" <u>Kinserlow v. CMI Corp.</u>, 217 F.3d 1021, 1025 (8th Cir. 2000) (<u>quoting Smith v. World Ins. Co.</u>, 38 F.3d 1456, 1460 (8th Cir. 1994) and <u>White v. Pence</u>, 961 F.2d 776, 779 (8th Cir. 1992)).   The court's review of the jury's verdict is extremely deferential.  In a motion for Judgment as a Matter of Law "the question is a legal one, whether there is sufficient evidence to support a jury verdict." <u>White</u>, 961 F.2d at 779.   The court cannot grant the Motion unless after reviewing the evidence in the light most favorable to the verdict, the court concludes that no reasonable jury could have returned a verdict for the nonmoving party.  <u>Morse Southern Union Co.</u>, 174 F.3d 917, 922 (8th Cir. 1999); <u>Denesha v. Farmers Ins. Exchange</u>, 161 F.3d 491, 497 (8th Cir. 1998).

In considering Lenders One's Motion for Judgment as a Matter of Law, this court must (1) consider the evidence in the light most favorable to DocMagic; (2) assume all conflicts in the evidence will resolve in DocMagic's favor; (3) assume DocMagic proved all facts that its evidence tended to prove; and (4) give DocMagic the benefit of all favorable inferences that may reasonably be drawn from the proven facts.  <u>See</u> <u>Morse</u>, 174 F.3d at 922; <u>Denesha</u>, 161 F.3d at 497.  In order to prevail on its Motion for Judgment as a Matter of Law, defendant Lenders One "has the difficult

task of demonstrating that all of the evidence points in [its] direction and is susceptible of no reasonable interpretation sustaining [DocMagic's] position." Morse, 173 F.3d at 922.

B.    Discussion

1.  Defendant again argues that the jury's Verdict for DocMagic on the claim that it was not allowed to attend the August conference is inconsistent with an award of zero damages.  Because DocMagic did not raise the issue of inconsistency before the discharge of the jury, defendant argues that DocMagic has waived the issue and the verdict should be entered in favor of Lenders One.

As noted above, the court need not decide the waiver issue because the court has found the verdict not inconsistent.   In Dairy Farmers of America, Inc. v. Travelers Ins. Co., 391 F.3d 936, 945 (8th Cir. 2004) the court said "Even assuming the claim was not waived, a jury's finding of liability without a corresponding award of damages does not invalidate the verdict.", citing Spears, 458 F.2d at 531 and Wright, 329 F.2d at 76.  There are acceptable rationales for the jury to have denied an award of damages.  As noted above, in the present case there was no direct evidence of damages incurred by plaintiff merely because of its non-attendance at the conference.  Plaintiff argues that because the conference attendance was part of the Agreement, the resulting overall breach warrants damages.  But damages from non-attendance would be purely speculative.   The jury found defendant's conduct occurred.   The damages from that specific conduct were unsupported by the evidence.  As noted by Dairy Farmers, "a burden of proof is exactly that - - a burden."

The jury rejected DocMagic's theory of damages but found Lenders One breached by refusing to allow DocMagic to attend the conference. The jury followed the law faithfully. The verdict should not be treated as a verdict in favor of Lenders One.

2. In this Motion for Judgment as a Matter of Law, Lenders One also moves for Judgment as a Matter of Law on DocMagic's fraud in the inducement claim regarding Caylx users. Lenders One argues it is entitled to Judgment as a Matter of Law because DocMagic gave the jury no legally sufficient evidentiary basis upon which to find for DocMagic on this claim.

Missouri recognizes a cause of action for fraudulent inducement. <u>Midwest Printing, Inc. v. AM Int'l.</u>, 108 F.3d 168, 170 (8th Cir. 1997). The elements of a fraudulent inducement claim are:

> (1) that [defendant] made certain material representations to [plaintiff ], (2) such representations were false when made, (3) the [defendant] making the representations knew they were false, (4) the representations were made with the purpose of deceiving [plaintiff], (5) [plaintiff] was, in fact, deceived, (6) [plaintiff] reasonably relied on the representations in signing the [contract], and (7) [plaintiff] suffered damage as a proximate result of the fraudulent misrepresentations.

<u>Trotter's Corp. v. Ringleader Restaurants, Inc.</u>, 929 S.W.2d 934, 939 (Mo. Ct. App. 1996). These elements were submitted to the jury in Instruction No. 11 <u>citing</u> MAI 23.05 (modified) and the <u>Trotter's</u> case.

Defendant argues that any representations that an "opportunity" regarding Caylx users existed was a mere prediction and that there was no evidence than any such representations were in fact false and that plaintiff did not sustain damages from any such statement turning out to be false.

What is essential in a motion for Judgment as a Matter of Law is that a court must draw all reasonable inferences in favor of DocMagic and not make credibility assessments or weigh the evidence. Arabian Agricultural Services Co., 309 F.3d at 482. As noted above, the court's review of the jury's verdict is extremely deferential and the court should not grant the Motion unless, after reviewing all the evidence in the light most favorable to the verdict, the court concludes that no reasonable jury could have returned a verdict for the nonmoving party. Morse Southern Union Co., 174 F.3d at 922.

Here, DocMagic submitted three instances of fraudulent representations but the jury only found for DocMagic on the issue of the Caylx users. Luke Pille admitted discussing with Steve Ribultan, the ten Caylx users who were concerned that they would be left without a document provider. Pille testified he did not tell the Caylx users about the negotiations with DocMagic and he did not assure Ribultan or anyone else that the Caylx users would transfer to DocMagic. The jury clearly believed Ribultan who testified that Pille told him that Caylx users would end up with DocMagic. During deliberations the jury even specifically asked for Plaintiff's Exhibit 9 which was the October 28th email from Pille to Ribultan in which he said he was pressing to get the Agreement signed quickly because Lenders One was losing its current document provider and thus current Caylx users provided a big opportunity for DocMagic. The inference the jury clearly drew was that the statements regarding the Caylx users were made to deceive DocMagic into believing

the statements were true so that it would contract with Lenders One and fill the need for a document provider for the Caylx users.[3]

Both Allen Brisbane and Steve Ribultan testified they believed Pille's statements regarding the Caylx-related opportunity and would not have approved signing the Agreement - - at least in part - - if they knew these representations would not materialize. Dominic Iannitti, the founder of DocMagic and the one who signed the Agreement, testified he would not have moved forward without - - at least in part - - the Caylx-related representations.

C.      Conclusion

Again, as noted above, this jury was "extraordinarily qualified." Applying the applicable law set out above, the court concludes, as a matter of law, that a reasonable jury could return a verdict for DocMagic on the fraudulent inducement claim. Defendant's Motion for Judgment as a Matter of Law will be denied.

III.   **Lenders One's Motion for Attorneys' Fees and Expenses [Doc. 148]**
        **DocMagic opposed the Motion [Doc. 160]**
        **Lenders One replied  [Doc. 167]**
**AND**
        **DocMagic's Motion for Attorneys' Fees  [Doc. 150]**
        **Lenders One opposed the Motion  [Doc. 162]**
        **DocMagic replied  [Doc. 165]**

---

[3]      Lenders One argues that the representations were not false because DocMagic signed up six new clients within the first two months after the Agreement was signed. The court finds that there was evidence of six new clients. There was no evidence that these clients were former Caylx users.

Both parties have filed a Motion for Attorneys' Fees based on the Agreement provision (¶ 19) that states:  "In the event of any dispute with respect to or relating to this Agreement in any way, the prevailing party shall be entitled to reasonable legal fees and other costs and expenses incurred in resolving such dispute and to any other relief to which that party may be entitled."

Because the issues in these Motions are overlapping and conflicting, the court will consider both Motions together.  Several issues are common to both:

A.    <u>Is the Agreement provision broad enough to include plaintiff's tort claim for fraud in the inducement?</u>

Defendant argues that plaintiff cannot be awarded attorneys' fees pursuant to the Agreement because under Missouri law "it is reversible error to award attorneys' fees pursuant to a contract provision if the award is to a party who did not prevail on a breach of contract claim."  (Doc. 162 at 2) Defendant cites numerous cases for this proposition.  Once again defendant argues that plaintiff waived its argument that the verdict on its contract claim (in which the jury found for plaintiff but awarded zero damages) was inconsistent because plaintiff did not raise the issue prior to the discharge of the jury.  Defendant cites cases stating that if such a waiver occurs the verdict shall be entered for the defendant.  The court has previously found that the jury's verdict was not inconsistent and will not repeat its analysis here.  <u>See</u>, <u>Dairy Farmers of America, Inc.</u>, 458 F.2d at 945.

Even if one does not agree that plaintiff was the prevailing party on the "conference alternative" of its breach of contract claim, it is clear and beyond

argument that the Agreement provision is broad enough to include plaintiff's tort claim.  Defendant's cited cases all contain contract provisions far more restrictive than ¶ 19 which applies to "...  **any dispute with respect to or relating to this Agreement in any way**...".  Defendant's reliance on Kochert v. Adagen Medical International, Inc., 491 F.3d 674 (7th Cir. 2007) is misplaced.  The contract provision applied in Kochert with respect to an arbitration clause dealt with "the interpretation, performance or breach of the Agreement..."  Id. at 678.  However, the Seventh Circuit found that the forum selection clause, which was at issue, was far broader than the arbitration clause.  In the instant case, the contract provision as set out above, said any dispute with respect to or relating to this Agreement in any way.  This provision includes fraudulent inducement to sign the Agreement.  Paragraph 19 is broad enough to include plaintiff's tort claim in assessing who is entitled to attorneys' fees.

B.    Who is the prevailing party?

Both plaintiff and defendant claim to be the prevailing party and thus entitled to attorneys' fees.  Plaintiff bases its claim on the case of Weitz v. MH Washington, 631 F.3d 510 (8th Cir., 2011) and argues that a "net prevailing party" analysis should apply.[4]  This court finds however, that the fee award in Weitz was based on

---

[4]    Weitz relies on Ozias v. Haley, 125 S.W. 556, 557 (Mo. Ct. App. 1910) ("It transpires frequently that in the verdict each party wins on some of the issues and as to those issues he prevails, but the party in whose favor the verdict compels a judgment is the prevailing party.  Each side may score, but the one with the most points at the end of the contest is the winner").  The issue in Ozias was who should recover costs.  It relied on Missouri's Statute, Section 1552, Rev.Stat. 1899 which dealt with "...all actions not founded on contract..."  This case is not on point

Missouri's Prompt Payment Act applicable to certain construction disputes and that the defendant induced plaintiff's breach.  See Weitz, 361 F.3d at 529.  Defendant cites Ken Cucchi Const. v. O'Keefe, 973 S.W.2d 520 (Mo. Ct. App. 1998) and Flamingo Pools, Spas, Sunrooms and More Store, Inc. v. Penrod, 993 S.W.2d 588 (Mo. Ct. App. 1999).  Under Missouri law, if a contract provides for the payment of attorneys' fees the trial court must award those fees.  Schnucks Carrollton Corp. v. Bridgeton Health & Fitness, Inc., 884 S.W.2d 733, 739 (Mo. Ct. App. 1994); Jackes-Evans Mfgr. Co. v. Christen, 848 S.W.2d 553, 557 (Mo. Ct. App. 1993).  The Agreement, ¶ 19, in the present case provides for attorneys' fees to the prevailing party in any dispute with respect to or relating to the Agreement in any way.  "A prevailing party is the party prevailing on the main issue in dispute, even though not necessarily to the extent of its original contention."  Ken Cucchi, 973 S.W.2d at 528, citing Birdsong v. Bydalek, 953 S.W.2d 103, 124 (Mo. Ct. App. 1997)  Here, the primary contention or Main Issue was the breach of the Agreement.  Lenders One prevailed on all but two of DocMagic's seven claims as well as on both of its own counterclaims.  Of the two claims on which DocMagic prevailed only one - - a tort - - resulted in damages.  Docmagic was awarded only a small fraction of the approximate $4,000,000 it sought on its fraudulent inducement claim.  By contrast, although the jury awarded DocMagic a net judgment exceeding that awarded to Lenders One, Lenders One

---

for the instant dispute and to the extent Weitz relies upon it, the reliance does not apply here.

- 24 -

recovered a substantially greater percentage of its requested damages.[5]  However, as noted, under Missouri law a party is not deemed to prevail simply because it received a higher dollar amount at trial.  <u>Ken Cucchi</u> and <u>Flamingo Pools</u>.  The court finds the Main Issue analysis should be applied in the instant case.  It should be noted that in determining the prevailing party, Missouri places just as much emphasis successfully defending claims as they do on successfully prosecuting them.  Lenders One prevailed on Summary Judgment and successfully defended five of the seven claims submitted by DocMagic.  <u>See</u>, <u>Hoag v. McBride & Son Investment Co., Inc.</u>, 967 S.W. 2d 157 (Mo. Ct. App. 1998) (where a plaintiff prevails on only one out of six claims, it cannot be considered a prevailing party pursuant to a contractual attorneys' fees provision).

    The court agrees with Lenders One's Statement "where both sides recover amount[s] offsetting contract claims, the relative amount of the award is a factor for determining who prevailed but courts also are required to weigh the number of claims successfully prosecuted or defended, the amount of recovery in proportion to the amount of damages sought and most importantly, who prevails on the Main Issues." (Doc. 149 at 10).  <u>See</u>, <u>e.g.</u>, <u>Hoag</u>, 967 S.W.2d at 175.  The court's conclusion is that Lenders One is the prevailing party and shall recover its attorneys fees pursuant to the Agreement.

_____

    [5]    DocMagic submitted seven claims under three separate grounds and claimed approximately $4,000,000.00 in damages.  Lenders One prevailed on every claim except two.  DocMagic was awarded less than 7% of what it claimed; the jury returned verdicts for Lenders One on all of its counterclaims and awarded 58% of its $90,515.00 claim.

C.     **Are Lenders One's Fees Reasonable?**

**Missouri Supreme Court Rule 4-1.5 states in pertinent part:**

> **(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:**
>
> > **(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;**
> > **(2) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyers;**
> > **(3) the fee customarily charged in the locality for similar legal services;**
> > **(4) the amount involved and the results obtained;**
> > **(5) the time limitations imposed by the client or by the circumstances;**
> > **(6) the nature and length of the professional relationship with the client;**
> > **(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and**
> > **(8) whether the fee is fixed or contingent.**

The court notes that like the parties in <u>Weitz</u>, here the parties' legal strategy can be characterized as having "a concede nothing, litigate everything attitude which predictably resulted in the cost of litigation rivaling the amount in dispute." <u>Weitz</u>, 631 F.3d at 530. The factors to be considered are a tool the court may use in its discretion to assess the reasonableness. It goes without saying that not every factor will be relevant in every case.

The court has reviewed the affidavits of Robert H. Epstein (Doc. 148, Ex. B) and David D. Crane (Doc. 148, Ex. C) as well as the invoices and time sheets of Gallop, Johnson & Neuman, L.C. (Doc. 148, Ex. A). The court finds the time expended for the work provided to be reasonable. The court finds the hourly rates

- 26 -

charged to be reasonable and commensurate with fees charged by attorneys in the St. Louis Metropolitan area with similar expertise.   The court incorporates by reference the summary of the application of Rule 4-1.5's factors in Doc. 148 at 5-7. The court finds Lenders One should be awarded attorneys' fees in the amount of $445,615.00.  The court notes that this amount is lower than the request made by DocMagic.

IV.   **Plaintiff's Bill of Costs [Doc. 151]**
**Defendant's Bill of Costs [Doc. 153]**
**Defendant's Motion for Attorneys' Fees and Expenses [Doc. 148]**
**Plaintiff's Opposition to Defendant's Bill of Costs [Doc. 158]**
**Defendant's Reply to Plaintiff's Memorandum in Opposition to Lenders One's Bill of Costs [Doc. 166]**
**Defendant's Supplemental Reply to Plaintiff's Memorandum in Opposition to Lenders One's Bill of Costs [Doc. 169]**

The Agreement at ¶ 19 provides not only for attorneys' fees but also for "other costs and expenses" to the prevailing party.  The court has already found that Lenders One is the prevailing party.

Lenders One submitted its Bill of Costs for its taxable costs in the amount of $3,188.90.  These costs were described as "fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case" on the form provided by the court.  (Doc. 153)  28 U.S.C. § 1920 has changed the wording slightly to "(2) fees for printed or electronically recorded transcripts necessarily obtained by use in the case." Although the verbiage is slightly different, the meaning is the same. These were all costs for depositions.

Defendant has also submitted invoices of expenses in the amount of $9,298.19.  (Doc. 148, Ex. A)

Plaintiff opposes defendant's Bill of Costs (Doc. 158) on the grounds that defendant's Bill of Costs was untimely filed and defendant was not the prevailing party.

Local Rule 8.03 provides that a party seeking an award of costs shall file a verified Bill of Costs in the form prescribed by the Clerk no later than twenty-one days after the entry of final judgment.  In Section II of this Memorandum Opinion the court dealt with the timeliness issue.  The Bill of Costs was timely filed.  In Section III of this Memorandum Opinion the court dealt with the prevailing party issue.  Defendant is the prevailing party.

The Agreement provides that the prevailing party shall be entitled to ". . .reasonable legal fees and other costs and expenses incurred in resolving such dispute. . ."  The court interprets this phrase as meaning that the word "reasonable" applies both to legal fees as well as to costs and expenses.  The court has examined the invoices submitted by Lenders One (Doc. 148, Ex. A) setting out their expenses and taxable costs (Doc. 153) and finds they are reasonable.  Therefore, Lenders One shall recover taxable costs in the amount of $3,188.90 and expenses in the amount of $9,298.19.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for New Trial is **DENIED.** [Doc. 154-1]

**IT IS FURTHER ORDERED** that Plaintiff's Alternative Motion for Additur is **DENIED**. [Doc. 154-2]

**IT IS FURTHER ORDERED** that Defendant's Motion to Alter or Amend the Order and Finding of November 14, 2011 [the Judgment] is **DENIED**. [Doc.156-1]

**IT IS FURTHER ORDERED** that Defendant's [Renewed] Judgment as a Matter of Law is **DENIED**. [Doc. 156-2]

**IT IS FURTHER ORDERED** that Defendant's Motion for Attorneys' Fees is **GRANTED**. [Doc. 148-1]

**IT IS FURTHER ORDERED** that Defendant shall recover from Plaintiff attorneys' fees in the amount of $445,615.00.

**IT IS FURTHER ORDERED** that Defendant's Motion for Expenses is **GRANTED**. [Doc. 148-2]

**IT IS FURTHER ORDERED** that Defendant shall recover from Plaintiff expenses in the amount of $9, 298.19.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorneys' Fees is **DENIED**. [Doc. 150]

**IT IS FURTHER ORDERED** that Defendant's Motion for Bill of Costs is **GRANTED**. [Doc. 153]

**IT IS FURTHER ORDERED** that Defendant shall recover from Plaintiff taxable costs of $3,188.90.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Bill of Costs is **DENIED**. [Doc. 151]

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this   30th   day of  January, 2012.